UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| WILLIAM H. DALY, | 5:22-CV-05051-RAL |
| Plaintiff, | |
| vs. | 1915A SCREENING DISMISSING IN PART, DIRECTING SERVICE IN PART, AND DENYING MISCELLANEOUS MOTIONS |
| CHIEF KEVIN THOM, CHIEF AT SHERIFFS DEPARTMENT, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; COMMANDER YANTIS, COMMANDER AT PENNINGTON COUNTY JAIL, IN HIS OR HER INDIVIDUAL AND OFFICIAL CAPACITY; CAPTAIN MUNCH, CAPTAIN AT PENNINGTON COUNTY JAIL, IN HIS OR HER INDIVIDUAL AND OFFICIAL CAPACITY; CORRECTIONAL OFFICER COMRIE, CORRECTIONAL OFFICER AT PENNINGTON COUNTY JAIL, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; CAPTAIN ANDERSON, IN HIS OR HER OFFICIAL CAPACITY, | |
| Defendants. | |

Plaintiff William H. Daly filed a pro se lawsuit under 42 U.S.C. § 1983.[1] This Court

granted Daly leave to proceed in forma pauperis and ordered him to pay an initial filing fee. Doc.

8. Daly timely paid his initial filing fee on June 10, 2022. Daly also has filed a motion to start a

---

[1] Daly marked both the 42 U.S.C. § 1983 action box in his complaint and the Bivens action box. Doc. 1 at 1. Bivens actions are reserved for when a federal official has violated a plaintiff's Constitutional rights. See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 389 (1971). Because defendants are county employees and not federal officials, any Bivens action that Daly may have intended to file is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

civil complaint, a motion for subpoena, a motion for appointment of counsel, and a motion for

evidence.  Docs. 4, 5, 9, 10.  This Court now screens Daly's complaint under 28 U.S.C. § 1915A.

## I.     1915A Screening

### A.     Factual Allegations of Daly's Complaint

Daly is an inmate[2] at the Pennington County Jail.  Doc. 1 at 1.  Daly claims that on March

9, 2022, C.O. Comrie stopped by Daly's table at breakfast and set his food tray down.  Id. at 4.

Daly claims that he reached for a biscuit on Comrie's tray and that Comrie grabbed his hand,

twisted his wrist, and smacked his hand very hard.  Id.  He claims that he never removed the biscuit

from the tray.  Doc. 4 ¶¶ B, J.  He also claims that Comrie then told him to lock down in his cell.

Doc. 1 at 4.  Daly alleges that he said "what," and Comrie replied, "I'm not fucken [sic] kidding[.]"

Id.  He alleges that he then went to his cell and locked in.  Id.  He also alleges that Comrie showed

up at his cell door shortly thereafter and told him that he would not have to lock down if he would

be Comrie's "cleaning bitch."  Id.  Daly states that he agreed to this and had to clean the recreation

yard.  Id.  He states that jail camera footage will support his allegations that Comrie assaulted him

with excessive force and punished him while his wrist was injured and swollen.  Id.  He also states

that this incident was not investigated, that internal affairs and chain of command never came to

speak with him, and that he was never asked if he wanted to file criminal challenges.  Id. at 5.

Daly provides what appear to be handwritten transcripts of his grievances and responses to

his grievances by Pennington County Jail officials.  Id. at 5, 9-10.  In these responses, Lieutenant

Houston, Captain Munch, and Commander Yantis all state that Comrie did not use excessive force

---

[2] Daly does not provide facts regarding the reason why he is detained at the Pennington County
Jail or his expected release date.  See Doc. 1.  For purposes of this screening, the Court will treat
Daly as if he was a pretrial detainee because he was incarcerated at a county jail when he filed the
present action.  See id. at 1.

and that Daly was reaching for food on a tray that did not belong to him. Id. at 5. A response by Houston states that Daly "cannot take food off the cart or a tray that does not belong to [him]" and that he "did not listen to the directive of the Officer when he said no." Id. at 5.

Daly alleges that on March 10, 2022, Sergeant Edwards questioned him about this incident. Id. at 6. Daly alleges that Edwards told Comrie not to lock Daly down and to just make Daly clean. Id. Daly alleges that his hand was swollen and in excruciating pain at this time. Id. He also alleges that Chief Kevin Thom, Yantis, Captain Anderson, and Munch never spoke with him about this incident. Id. Daly states that medical staff came to speak with him that day about his wrist and said that he needed to see the medical provider. Id. at 7. He states that medical staff also told him to request ibuprofen and to use an ice pack. Id. He also states that no doctor or medical provider came to see him. Id. Daly claims that Sergeant Berkley came and took a picture of his wrist the next day, but no medical provider ever performed an x-ray or provided a report. Id.

Daly states that on the day he was arrested and booked,[3] he was in excruciating tooth pain. Id. at 8. He states that Pennington County Jail officials requested that medical staff examine Daly because of his tooth pain, but he never saw a dentist. Id. He also states that he has gone without treatment for over four months. Id. Daly claims that his tooth is broken with constant bleeding and chipping. Id. In his handwritten grievance transcripts from late 2021, he claims that his teeth continue to break and bleed and that he has a gum infection, abscesses, and multiple cavities. Id. at 9. He also provides handwritten grievance transcripts from March and April 2022, in which he

---

[3] Daly states that this was "on or about August 13, 2022," but Daly filed this complaint on May 19, 2022. According to the Pennington County Jail website, Daly was booked on August 13, 2021. See Current Inmates, Pennington County Jail, https://www.pennco.org/index.asp?SEC=CDB01E68-46D3-4C6D-9B71-B9E339009D8E (last visited Oct. 6, 2022).

asked to see the dentist and complained of further chipping and pain. Id. He claims that he saw the dentist for a second time on or around April 22, 2022, that the dentist could not pull a badly infected tooth, and that he was prescribed antibiotics at the time. Id.

Daly is a Catholic and claims that he has not received meatless meals on Fridays during Lent in violation of his religious beliefs. Id. at 5, 10. The handwritten grievance transcripts he submitted show that he brought this issue to the attention of Pennington County Jail staff on April 5, 2022. Id. at 10. He received a response the next day in which he was told that he was supposed to request a religious accommodation earlier. Id. This response explains that there is no vegetarian meal at the Pennington County Jail, but they can try to provide a meatless diet. Id. Daly was told that this accommodation might not be possible on such short notice. Id. The next week, Daly submitted a grievance in which he claimed that he told Pennington County Jail staff that he was Catholic when he was booked and that he saw a Catholic priest for confession in August. Id. Houston replied that Daly should receive his requested meatless meal that Friday but that Daly ought to request accommodations ahead of time in the future. Id.

Daly alleges that the Pennington County Jail has violated his constitutional rights by failing to discipline its officers. Id. at 11. He alleges that the "[h]istory of grievance in Pennington County Jail will prove this grievance system does not work[.]" Id. He indicates in his complaint that this claim has to do with "Disciplinary Proceedings[,]" but he only alleges that the Pennington County Jail fails to discipline its own officers and makes no claims regarding his own disciplinary proceedings. See id. He alleges that he has been "intentionally intimidated" by other guards at the Pennington County Jail. Id. at 12. He also alleges that Comrie was removed from his unit for a short amount of time, but Comrie has since returned and looks at him as if this situation will get worse if he is not quiet about it. Id.

4

Daly states that his wrist was swollen for several days and that he was still in pain a month later. Id. at 4, 6-7. He states that he has developed "antisocial disorder[,]" that he lives in fear of retaliation, and that he has nightmares and constant paranoia. Id. He seeks money damages for his injuries, pain and suffering, and emotional and mental damages. Id. at 12. He also asks this Court to begin an FBI investigation into the Pennington County Jail. Doc. 4 at ¶ K. Daly brings claims against Thom, Yantis, Munch, and Comrie in their individual and official capacities and against Anderson in his or her official capacity only.[4] See Doc. 1 at 1-2. Daly does not specify which claims he brings against which defendants, and this Court will treat each claim as being brought against each defendant. See id. at 4-12.

**B.     Legal Standard**

A court when screening under § 1915A must assume as true all facts well pleaded in the complaint. Estate of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted). Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per

---

[4] If a plaintiff does not specify the capacity in which he or she sues a defendant, the suit is treated as only including official capacity claims. Egerdahl v. Hibbing Cmty. Coll., 72 F.3d 615, 619 (8th Cir. 1995); Nix v. Norman, 879 F.2d 429, 431 (8th Cir. 1989). Daly does not specify the capacity in which he sues Anderson. See Doc. 1 at 1-2. Thus, he sues Anderson in his or her official capacity only.

curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam) (citations omitted).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted).  If a complaint does not contain these bare essentials, dismissal is appropriate.  See Beavers v. Lockhart, 755 F.2d 657, 663 (8th Cir. 1985) (citation omitted).  Twombly requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]"  Twombly, 550 U.S. at 555 (internal citation omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (noting that a complaint "must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing Twombly, 550 U.S. at 553-63)).  Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).

C.     **Daly's Causes of Action**

1.     **Official Capacity Claims for Money Damages**

Daly brings claims against Thom, Yantis, Munch, Comrie, and Anderson in their official capacities.  See Doc. 1 at 1-2.  All defendants were employees of the Pennington County Sheriff's Office and the Pennington County Jail at the time of the incidents in question.  See id.  "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity."  Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th

Cir. 2010). Daly's official capacity claims against Thom, Yantis, Munch, Comrie, and Anderson are equivalent to claims against Pennington County.

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). A municipal government may be sued only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," deprives a plaintiff of a federal right. Id.; see also Clay v. Conlee, 815 F.2d 1164, 1170 (8th Cir. 1987) (finding that "the [governmental] entity's official 'policy or custom' must have 'caused' the constitutional violation" in order for that entity to be liable under § 1983).

To establish governmental liability premised on an unofficial custom rather than an official policy, a plaintiff must allege facts to support a finding of "a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees" and "deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct[.]" Brewington v. Keener, 902 F.3d 796, 801 (8th Cir. 2018) (quoting Corwin v. City of Independence, 829 F.3d 695, 700 (8th Cir. 2016)). A § 1983 complaint does not need to "specifically plead the existence of an unconstitutional policy or custom to survive a motion to dismiss." Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d 588, 591 (8th Cir. 2004) (citing Doe ex rel. Doe v. Sch. Dist., 340 F.3d 605, 614 (8th Cir. 2003)). But the complaint must include some allegation, reference, or language that creates an inference that the conduct resulted from an unconstitutional policy or custom. Id.; see also Doe, 340 F.3d at 614 ("At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom.").

Here, Daly does not make claims regarding official policies, but he does allege that the Pennington County Jail has an unofficial custom of failing to respond to grievances, failing to discipline its employees, and failing to investigate employee misconduct. See Doc. 1 at 11. Daly does not allege sufficient facts to show "a continuing, widespread, persistent pattern of unconstitutional misconduct" as required under Brewington. See 902 F.3d at 801. Instead, he only alleges individual examples of these failures, stemming from two instances where he claims the Pennington County Jail failed to respond to grievances asking for medical attention and one instance where he alleges the Pennington County Jail failed to discipline Comrie for using excessive force against him. Doc. 1 at 4-9, 11. He does not claim that Pennington County Jail employees have a custom of failing to provide medical care or using excessive force. See id. Further, he makes no allegation that the conduct in question, which is a lack of medical care and a use of excessive force, resulted from the alleged custom of failing to respond to grievances, failing to discipline employees, and failing to investigate misconduct. See id. Thus, Daly's claims against Thom, Yantis, Munch, Comrie, and Anderson in their official capacities for money damages are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### 2.    Individual Capacity Claims and Official Capacity Claims for Injunctive Relief

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

8

Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up).  Daly's individual capacity claims must allege that each individual defendant either participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor.

        **a.**        **Fourteenth Amendment Due Process Claim for Excessive Force**

       Although the Eighth Amendment protection against cruel and unusual punishment protects inmates from excessive force, the Eighth Amendment is not implicated until after "a formal adjudication of guilt in accordance with due process of law." Ingraham v. Wright, 430 U.S. 651, 671 n.40 (1977).  Before a formal adjudication of guilt but following a lawful commitment to pretrial detention, a detainee's right to be free from excessive force is protected by the Due Process clause of the Fourteenth Amendment.  See id.; Bell v. Wolfish, 441 U.S. 520, 535-37 (1979).  The Supreme Court of the United States has explained that "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable" when bringing an excessive force claim under the Fourteenth Amendment's due process protections.  See Kingsley v. Hendrickson, 576 U.S. 389, 396-97 (2015).

       This standard is not to be applied mechanically and "turns on the 'facts and circumstances of each particular case.'"  Id. at 397 (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)).  "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id.  Further, the court must consider "the legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in th[e] judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." Id. (alterations in original) (quoting Bell, 441 U.S. at 540, 547)

(cleaned up).   In <u>Kingsley</u>, the Supreme Court explained that a court, in analyzing the reasonableness of the official's actions, should consider

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

<u>Id.</u>   But this list is non-exclusive and is only meant to "illustrate the types of objective circumstances potentially relevant to a determination of excessive force." <u>Id.</u>

Here, Daly alleges sufficient facts to state a claim for excessive force in violation of his Fourteenth Amendment due process rights against Comrie.  Daly claims that he was reaching for a biscuit on Comrie's tray when Comrie grabbed his hand, twisted his wrist, and hit him.  Doc. 1 at 4.  A handwritten grievance transcript from Houston states that Daly "did not listen to the directive of [Comrie] when he said no." <u>Id.</u> at 5.  Although Comrie may have been justified in using some force to prevent Comrie from taking food off his tray, this was not, at least as Daly has alleged it, a security problem sufficiently severe as to require Comrie to hit and injure Daly.  <u>See</u> <u>Kingsley</u>, 576 U.S. at 397.  Thus, Daly's Fourteenth Amendment due process claim against Comrie for excessive force survives § 1915A screening.

Daly does not claim that Thom, Yantis, Munch, or Anderson participated in the alleged use of excessive force, nor does he claim that they caused the conduct to occur through a failure to train or supervise Comrie. <u>See</u> Doc. 1 at 4-12; <u>Parrish</u>, 594 F.3d at 1001.  Instead, he only alleges that these defendants became aware of the alleged use of excessive force by Comrie and failed to investigate it.  <u>See</u> Doc. 1 at 6.  Thus, Daly's Fourteenth Amendment due process claim against Thom, Yantis, Munch, and Anderson for excessive force is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

**b.    Fourteenth Amendment Due Process Claims for Deliberate Indifference to Serious Medical Needs**

A pretrial detainee's claims of inadequate medical care are analyzed under the Fourteenth Amendment's due process protections, rather than under the Eighth Amendment. <u>Davis</u>, 992 F.2d at 152 (citing <u>Johnson-El v. Schoemehl</u>, 878 F.2d 1043, 1048 (8th Cir. 1989). But because the United States Court of Appeals for the Eighth Circuit has not established a different standard for this analysis, these claims are examined under the same deliberate indifference standard as Eighth Amendment claims by convicted inmates. <u>Id.</u> at 152-153.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976) (quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." <u>Id.</u> at 104-05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." <u>Id.</u> at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Id.</u> at 106. Allegations of negligence will not suffice, nor will mere disagreement with treatment decisions. <u>Jolly v. Knudsen</u>, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing <u>Estate of Rosenberg</u>, 56 F.3d at 37).

The deliberate indifference standard includes both an objective and subjective component. <u>Dulany v. Carnahan</u>, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing <u>Coleman v. Rahija</u>, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those

11

needs." Id. (citing Coleman, 114 F.3d at 784). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.' " Coleman, 114 F.3d at 784 (quoting Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995)). To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Daly brings a deliberate indifference claim regarding his wrist and a second deliberate indifference claim regarding his dental issues. See Doc. 1 at 7-9. He alleges that his wrist has been swollen and in excruciating pain since he was injured by Comrie. Id. at 4, 6. He also alleges that he has had severe tooth and gum pain and symptoms, including infection, cavities, and bleeding. Id. at 8-9. As alleged, these are both serious medical needs. Daly alleges that he has brought these needs to the attention of Pennington County Jail officials and that he has not received the medical care that he needs. See id. at 7-9. He specifically alleges that he was told to see the medical provider for his wrist but was never able to do so and that he submitted several grievances describing his dental issues and requesting to see a dentist. Id. at 7, 9.

Daly makes no allegations that the named defendants were made aware of his medical issues. See id. at 7-9. Instead, he claims that Sergeant Berkley, who is not a named defendant, took a picture of his wrist, and unnamed medical staff spoke to him about his wrist injury. Id. at 7. Based on the handwritten grievance response transcript dated eleven days after the incident with Comrie, Yantis apparently told Daly that "[a]ny discomfort caused was likely due to your exaggerated response to [Comrie's] contact." Id. at 5. This is enough to show that Yantis was aware that Daly was hurt during the incident, but it does not show that Yantis was aware of and

deliberately indifferent to the ongoing injury and medical need that Daly alleges. Although Daly includes his handwritten grievance transcripts regarding his dental issues, he makes no allegations that any of the named defendants reviewed those grievances or were otherwise aware of his dental needs. See id. at 8-9.

Thus, because no individual defendants can be held liable under Farmer, see 511 U.S. at 837, Daly's Fourteenth Amendment due process claims for deliberate indifference to serious medical needs against Thom, Yantis, Munch, and Comrie in their individual capacities are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l). Further, while Daly does seek injunctive relief by asking this Court to order an FBI investigation into the Pennington County Jail, this relief would not address his medical needs. Thus, Daly's Fourteenth Amendment due process claims for deliberate indifference to serious medical needs against Thom, Yantis, Munch, Comrie, and Anderson in their official capacities are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### c.   Fourteenth Amendment Due Process Grievance System Claim

Construing his complaint liberally, Daly alleges that defendants violated his Fourteenth Amendment right to due process by neglecting the Pennington County Jail grievance system. See Doc. 1 at 9. "While a violation of a state-created liberty interest can amount to a violation of the Constitution, not every violation of state law or state-mandated procedures is a violation of the Constitution." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam) (holding that a refusal to process grievances alone did not state a constitutional deprivation.). "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the [F]ourteenth [A]mendment." Id. (first alteration in original) (quoting

13

Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also King v. Houston, 556 F. App'x 561, 563 (8th Cir. 2014) (per curiam) (explaining that, under Buckley, "prison officials' failure to process or investigate grievances, without more, is not actionable under § 1983").  Here, Daly claims that the Pennington County Jail does not properly address grievances, but this claim fails under Buckley.  Thus, Daly's Fourteenth Amendment due process claims for grievance process issues against Thom, Yantis, Munch, Comrie, and Anderson are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

> d.     **Fourteenth Amendment Due Process Failure to Investigate Claim**

Although the Eighth Circuit has recognized a due process claim against "reckless or intentional failure to investigate that shocks the conscience[,]" this right protects those being prosecuted for criminal offenses.  See Akins v. Epperly, 588 F.3d 1178, 1184 (8th Cir. 2009).  A criminal defendant can bring such a claim in the following circumstances: "(1) evidence that the state actor attempted to coerce or threaten the defendant, (2) evidence that investigators purposefully ignored evidence suggesting the defendant's innocence, [or] (3) evidence of systematic pressure to implicate the defendant in the face of contrary evidence."  Id.  Here, Daly merely claims that Pennington County Jail officials failed to investigate Comrie.  See Doc. 1 at 9.  Daly does not allege that Pennington County Jail officials recklessly or intentionally failed to investigate criminal charges against him.  Thus, Daly's Fourteenth Amendment due process claims for failure to investigate against Thom, Yantis, Munch, Comrie, and Anderson are dismissed without prejudice under without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

> e.     **Fourteenth Amendment Equal Protection Claim**

Daly claims that his Fourteenth Amendment equal protection rights have been violated because he has been "deprived of the laws of the United States of America[.]" Id. at 6.  This claim

appears to stem from his belief that Comrie's use of force was a criminal assault and that the Pennington County Jail's failure to investigate this assault has deprived him equal protection of the laws. See id. Daly claims that Thom, Yantis, Munch, and Comrie committed a "hate full [sic] hate crime to an inmate[.]" Id. at 2. He also states that a "[h]ate crime to a prisoner is a federal crime." Doc. 4 ¶ H.

The Equal Protection Clause of the Fourteenth Amendment requires the government to "'treat similarly situated people alike,' a protection that applies to prison inmates." Murphy v. Mo. Dep't of Corr., 372 F.3d 979, 984 (8th Cir. 2004) (quoting Rouse v. Benson, 193 F.3d 936, 942 (8th Cir. 1999)). To show an equal protection violation, Daly "must show that he is treated differently than a similarly situated class of inmates, that the different treatment burdens one of his fundamental rights, and that the different treatment bears no rational relation to any legitimate penal interest." Id. (citing Weiler v. Purkett, 137 F.3d 1047, 1051 (8th Cir. 1998) (en banc)). Typically, an equal protection violation requires that "the different treatment is based upon . . . a suspect classification[.]" Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 815 (8th Cir. 2008) (citations omitted). "Suspect classifications include those such as race, alienage, gender, or national origin." Knapp v. Hanson, 183 F.3d 786, 789 (8th Cir. 1999). Also, "[r]eligion is a suspect classification." Patel, 515 F.3d at 816 (citing Weems v. Little Rock Police Dep't, 453 F.3d 1010, 1016 (8th Cir. 2006)). Here, Daly fails to allege differential treatment based on a suspect classification.

Also, Daly's allegations do not support a class of one equal protection claim. A "class of one" equal protection claim was recognized by the Supreme Court in Village of Willowbrook v. Olech. 528 U.S. 562, 564 (2000) (per curiam). The Eighth Circuit has applied the "class of one" analysis to a prison setting. Nolan v. Thompson, 521 F.3d 983, 989-90 (8th Cir. 2008). In Nolan, because the plaintiff had not alleged he was a member of a protected class or that his fundamental

rights had been violated, the court found he had to show that defendants "systematically and 'intentionally treated [him] differently from others similarly situated and that there [was] no rational basis for the difference in treatment.' " Id. at 989 (first alteration in original) (quoting Olech, 528 U.S. at 564). The plaintiff had to "provide a specific and detailed account of the nature of the preferred treatment of the favored class[.]" Id. at 990 (quoting Jennings v. City of Stillwater, 383 F.3d 1199, 1214-15 (10th Cir. 2004)). Again, Daly makes no claims regarding the treatment of other inmates, so he cannot show that he has been treated differently than other inmates. Thus, Daly's Fourteenth Amendment equal protection claim is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### f.    First Amendment Free Exercise Claim

Construing his complaint liberally, Daly brings a First Amendment free exercise claim against Thom, Yantis, Munch, Comrie, and Anderson. See Doc. 1 at 5, 10. Specifically, he alleges that he has not received meatless meals on Fridays during Lent in violation of his Catholic beliefs.[5] Id. In order to state a First Amendment free exercise claim, Daly must allege facts showing that prison officials have substantially burdened the free exercise of his religion. Patel, 515 F.3d at 813. Substantially burdening the free exercise of religion means that the regulation

> must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion.

Murphy, 372 F.3d at 988 (cleaned up).

---

[5] The Catechism of the Catholic Church under its "Precepts of the Church" refers to a fifth precept—"You shall observe the prescribed days of fasting and abstinence"—as a means to observe "the times of ascesis and penance which prepare us for the liturgical feasts; they help us acquire mastery over our instincts and freedom of heart." Catechism of the Catholic Church § 2043.

Here, Daly alleges that he told Pennington County Jail staff that he was Catholic when he was booked and that he previously saw a Catholic priest for confession. Doc. 1 at 10. But he makes no claim that defendants burdened his religious exercise other than failing to realize that he was Catholic. See id. Although it is unclear whether Daly actually received meatless meals after requesting them via a grievance, the record shows that Houston replied that Daly should receive a meatless meal as requested, and Daly submits no further handwritten grievance transcripts on this issue. See id. At most, Pennington County Jail officials failed to note Daly's religion at intake and failed to notice that he was Catholic based on one instance of confession, but they appear to have corrected this issue upon being informed of it. See id. This does not rise to the level of a substantial burden. Thus, Daly's First Amendment free exercise claim against Thom, Yantis, Munch, Comrie, and Anderson is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## II.    Motion for Subpoena and Motion for Evidence

Daly has filed a motion for subpoena and a motion for evidence. Docs. 5, 10. Under Federal Rule of Civil Procedure 26(d)(1), a party may not seek discovery prior to a Rule 26(f) conference "except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1). One such proceeding is "an action brought without an attorney by a person in the custody of the United States, a state, or a state subdivision[.]" Fed. R. Civ. P. 26(a)(1)(B)(iv).

However, discovery is improper before a complaint is initially served. See Fed. R. Civ. P. 5(d)(1)(A) ("Any paper *after the complaint* that is required to be served—must be filed no later than a reasonable time after service." (emphasis added)); cf. Webb v. Johnson, 2021 WL 2002712, at *10 n.7 (D. Neb. May 19, 2021) ("[In a pro se civil case,] the court will issue a progression

17

order, addressing discovery and other issues, approximately thirty days after the last defendant has answered." (quotation omitted)); <u>Mays v. Sherburne Cnty. Jail</u>, 2020 U.S. Dist. LEXIS 82530, at *5-6 (D. Minn. May 11, 2020) ("[Defendants] would not be required to respond to any discovery request [plaintiff] served on them until after service of the Summons and Complaint has occurred."). Thus, Daly's motions are premature, and his motion for subpoena, Doc. 5, and motion for evidence, Doc. 10, are denied.

### III.     Motion for Appointment of Counsel

Daly has filed a motion to appoint counsel. Doc. 9. "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." <u>Stevens v. Redwing</u>, 146 F.3d 538, 546 (8th Cir. 1998). In determining whether to appoint counsel to a pro se litigant, this Court considers the complexity of the case, the ability of the litigant to investigate the facts, the existence of conflicting testimony, and the litigant's ability to present his claims. <u>Id.</u> At this time, Daly's claims do not appear to be complex, and he is able to investigate the facts and present his claims adequately. This Court believes that Daly is capable of pursuing his claims pro se at this phase of litigation, and his motion for appointment of counsel, Doc. 9, is denied at this time.

### IV.     Motion to Start a Civil Complaint

Daly has filed a motion to start a prisoner's civil complaint. Doc. 4. This motion is unnecessary, as Daly has begun this lawsuit by filing it. Thus, Daly's motion to start a prisoner's civil complaint, Doc. 4, is denied as moot.

### V.     Order

Accordingly, it is

ORDERED that Daly's Fourteenth Amendment claim for excessive force against Comrie in his individual capacity and official capacity (only for injunctive relief) survives § 1915A screening.  It is further

ORDERED that Daly's remaining claims against all defendants are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  It is further

ORDERED that Daly's motion for subpoena, Doc. 5, is denied.  It is further

ORDERED that Daly's motion for evidence, Doc. 10, is denied.  It is further

ORDERED that Daly's motion for appointment of counsel, Doc. 9, is denied.  It is further

ORDERED that Daly's motion to start a civil complaint, Doc. 4, is denied as moot.  It is further

ORDERED that the Clerk shall send blank summons forms and U.S. Marshals Service Form (Form USM-285) to Daly so that he may complete the form to cause the complaint to be served upon defendant Comrie.  It is further

ORDERED that Daly shall complete and send the Clerk of Courts a summons and USM-285 form for defendant Comrie.  Upon receipt of the completed summons and USM-285 forms, the Clerk of Court will issue the summons.  If the completed summons and USM-285 form are not submitted as directed, the complaint may be dismissed.  It is further

ORDERED that the United States Marshals Service shall serve the completed summons, together with a copy of the complaint, Doc. 1, and this order upon defendant Comrie.  It is further

ORDERED that defendant Comrie will serve and file an answer or responsive pleading to the amended complaints and supplement on or before 21 days following the date of service or 60 days if the defendant falls under Fed. R. Civ. P. 12(a)(2) or (3).  It is finally

ORDERED that Daly will keep the court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the court's Civil Local Rules while this case is pending.

DATED October 19th, 2022.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE