UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| WILLIAM H. DALY, <br><br> Plaintiff, <br><br> vs. <br><br> CORRECTIONAL OFFICER COMRIE, CORRECTIONAL OFFICER AT PENNINGTON COUNTY JAIL; INDIVIDUAL AND OFFICIAL CAPACITY; <br><br> Defendant. | 5:22-CV-05051-RAL <br><br><br> OPINION AND ORDER GRANTING SUMMARY JUDGMENT |

This case arises out of an incident on March 9, 2022, at the Pennington County Jail. Pro se plaintiff William H. Daly (Daly) alleges that Correctional Officer Comrie (Comrie) used excessive force during breakfast at the jail when Daly reached for a biscuit on Comrie's tray and that other jail officials failed to provide aid to Daly after Comrie injured him. Doc. 1. This Court issued a § 1915A screening order dismissing the claims against the other officers and leaving only the claims against Comrie in his individual and official capacities. Doc. 11. Comrie then filed a motion to dismiss and a brief in support arguing that the individual capacity claims are barred by qualified immunity and that, because there was no constitutional violation, the official capacity claim fails as well. Docs. 20–22. This Court, when ruling on other motions, gave notice that it intended to treat the motion to dismiss as one for summary judgment because of the medical record and videos attached to the motion. Doc. 24. Daly objected to the treatment of this motion as one for summary judgment, stating that the authenticity of the materials provided in Comrie's motion

1

are in question and that Daly has not had the opportunity to provide evidence to create a full record for this Court to consider due to his incarceration. Doc. 25. For the reasons discussed below, this Court grants summary judgment.

I.     **Standard on Motion for Summary Judgment**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); McManemy v. Tierney, 970 F.3d 1034, 1037 (8th Cir. 2020). Rule 56(a) places the burden on the moving party to establish the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The nonmoving party must establish that a material fact is genuinely disputed by either "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1)(A), (B); see also Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145–46 (8th Cir. 2012) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials" in his pleading but "must set forth specific facts showing that there is a genuine issue for trial." Gacek, 666 F.3d at 1145–46 (citing Anderson, 477 U.S. at 256); see also Mosley v. City of Northwoods, 415 F.3d 908, 910 (8th Cir. 2005) (stating that a nonmovant may not merely rely on allegations or denials).

In ruling on a motion for summary judgment, the facts and inferences fairly drawn from those facts are "viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)); Taylor v. Riojas, 141 S. Ct. 52, 53 n.1

(2020) (per curiam); Intel Corp. Inv. Pol'y Comm. v. Sulyma, 140 S. Ct. 768, 779 (2020). However, if the record contradicts the non-moving party's account so that no reasonable jury could believe it, then such an assumption in favor of their version of facts is not made. Scott v. Harris, 550 U.S. 372, 380 (2007); Intel Corp. Inv. Pol'y Comm., 140 S. Ct. at 779; McManemy, 970 F.3d at 1037; Westwater v. Church, 60 F.4th 1124, 1129 (8th Cir. 2023). This Court converts the motion to dismiss to one for summary judgment as it notified the parties and will construe the facts in the light most favorable to Daly.

## II. Facts

Daly is an inmate[1] at the Pennington County Jail. Doc. 1 at 1. Daly claims that on March 9, 2022, Comrie stopped by Daly's table at breakfast and set his food tray down. Id. at 4. Daly claims that he reached for a biscuit on Comrie's tray and that Comrie grabbed his hand, twisted his wrist, and smacked his hand very hard. Id. He claims that he never removed the biscuit from the tray. Doc. 4 ¶¶ B, J. He also claims that Comrie then told him to lock down in his cell. Doc. 1 at 4. Daly alleges that he said "what," and Comrie replied, "I'm not fucken [sic] kidding[.]" Id. He alleges that he then went to his cell and locked in. Id. Daly alleges that his hand was swollen and in excruciating pain because Comrie made Daly clean while his wrist was still injured. Id.

Video footage of the incident from two different angles exist as exhibits to the motion to dismiss. Docs. 22-1, 22-2. Daly now objects to the video, but he mentioned the videos in his initial complaint and subsequent filings. Docs. 1, 25–26. Daly's objection to the video challenges

---

[1] Daly does not provide facts regarding the reason why he is detained at the Pennington County Jail or his expected release date. See Doc. 1; Doc. 11 at 2 n.2. For purposes of this order, this Court will remain consistent with its previous orders and treat Daly as if he was a pretrial detainee because he was incarcerated at a county jail when he filed the present action. See Doc. 1 at 1. The additional filings by Comrie do not provide additional clarity regarding Daly's status. Doc. 21. However, Daly does state in his declaration that he is preparing for his "pending criminal trial." Doc. 26 ¶ 5.

3

authenticity because Daly has not been able to view the videos. Doc. 26 ¶ 23. This Court has viewed the videos of the incident and they are not doctored. The footage of the incident begins when Comrie's food tray is already on the table and Daly walks up to the table and moves around it to be closer to Comrie. Doc. 22-1 at 7:55:13–:15; Doc. 22-2 at 7:55:13–:15. Another officer tosses something onto Comrie's tray and then Daly reaches for Comrie's tray. Doc. 22-1 at 7:55:18–:19; Doc. 22-2 at 7:55:18–:19. As Daly reaches for the tray, Comrie grabs Daly's wrist. Doc. 22-1 at 7:55:18–:19; Doc. 22-2 at 7:55:18–:19. Comrie then lifts Daly's wrist up and away from the tray, possibly twists the wrist slightly, if at all, and then releases Daly's wrist. Doc. 22-1 at 7:55:20; Doc. 22-2 at 7:55:20. Comrie did not hit Daly's wrist and instead pushes it up and away from his tray. Doc. 22-1 at 7:55:20; Doc. 22-2 at 7:55:20. Comrie then picks up his tray and walks away from Daly. Doc. 22-1 at 7:55:21; Doc. 22-2 at 7:55:21. Daly does not react like he is in pain by shaking, holding, or cradling his wrist, and instead walks away and grabs a coffee cup in the allegedly injured hand. Doc. 22-1 at 7:55:25–:37; Doc. 22-2 at 7:55:27–:29. One camera angle shows Comrie saying something to Daly, pointing at him as he walks away. Doc. 22-1 at 7:55:22. A few seconds later, on the other camera, Comrie is again seen pointing at Daly and saying something as he walks away. Doc. 22-2 at 7:55:37–:39.

Daly states that medical staff came to speak with him that day about his wrist. Doc. 1 at 7; Doc. 22-3. The medical record provided with the motion to dismiss confirms Daly's allegation about the sick call and treatment plan. Doc. 1 at 7; Doc. 22-3; Doc. 26. The medical record states that two medical providers examined Daly's wrist. Doc. 22-3. When the medical providers arrived, Daly was playing basketball in the recreation area with the other inmates. Id. A review of the wrist found the temperature was consistent, blood flow was normal, the range of motion of the injured right hand matched the range of motion of the left hand, and nothing was abnormal

through visual inspection or palpations. Id. The medical staff showed Daly some stretches for the wrist and recommended a treatment plan including the use of over-the-counter pain medications and ice packs. Doc. 1 at 7; Doc. 22-3. Daly states that his wrist was swollen for several days after this treatment and that he was still in pain a month later. Doc. 1 at 4, 6–7. He states that he has developed "antisocial disorder[,]" that he lives in fear of retaliation, and that he has nightmares and constant paranoia. Id.

## III. Discussion

### A. Individual Capacity Claim

"Qualified immunity shields [government] officers from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Westwater, 60 F.4th at 1128 (cleaned up and citation omitted). When determining if an officer is protected by qualified immunity, the Court must find first that there is sufficient evidence an officer violated a constitutional right and second that the right violated was so clearly established a reasonable officer would have known their conduct was unlawful. Hansen v. Black, 872 F.3d 554, 557–58 (8th Cir. 2017). The court may consider these steps in any order, Pearson v. Callahan, 555 U.S. 223, 236 (2009), but "[u]nless the answer to both of these questions is yes, the defendants are entitled to qualified immunity," Krout v. Goemmer, 583 F.3d 557, 564 (8th Cir. 2009).

As a pretrial detainee, the constitutional right at issue in Daly's suit arises out of the Due Process Clause of the Fourteenth Amendment. Edwards v. Byrd, 750 F.3d 728, 732 (8th Cir. 2014). Under that clause pretrial detainees are protected from the use of excessive force that amounts to punishment. Graham v. Connor, 490 U.S. 386, 395 n.10 (1989). Pretrial detainees are afforded at least as much protection under the Due Process Clause as convicted persons would

receive under the Eighth Amendment. Owens v. Scott Cnty. Jail, 328 F.3d 1026, 1027 (8th Cir. 2023). The question of excessive force as it applies to pretrial detainees focuses on "whether a defendant's purpose in using force against a pretrial detainee was to injure, punish or discipline the detainee." Edwards, 750 F.3d at 732 (cleaned up) (quoting Putnam v. Gerloff, 639 F.2d 415, 419 (8th Cir. 1981)). In other words, "[w]hen confronted with a claim of excessive force alleging a violation of the Eighth Amendment, the core judicial inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Santiago v. Blair, 707 F.3d 984, 990 (8th Cir. 2013) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)).

A judge must use an objective standard to consider the totality of the circumstances when determining whether the force used against the pretrial detainee by the correctional officer was done purposely or knowingly and was objectively unreasonable. Kingsley v. Hendrickson, 576 U.S. 389, 396–97 (2015). However, this standard should not, and in fact cannot be applied mechanically. Id. at 397. Thus, the court must base the decision on what the officer knew at the time and not with the benefit of hindsight. Id. Additionally, a court must consider and "account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." Id. (quoting Bell v. Wolfish, 441 U.S. 520, 540, 547 (1979)).

> Other factors bearing on the reasonableness or unreasonableness of the force include:
>
> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Id. (citing Graham, 490 U.S. at 396). These factors are not exhaustive as the ultimate question of objective reasonableness turns on the "facts and circumstances of each particular case." Graham, 490 U.S. at 397.

In this case, Daly reached for a biscuit on Comrie's tray. Any use of force needed to prevent Daly from grabbing the biscuit would be extremely minimal, such as through a verbal order or minimal physical force. Comrie used minimal hands-on force in this case. The videos reveal that Comrie did not hit Daly's wrist, and any twist was slight and not abrupt or made with significant force. Comrie essentially grasped Daly's wrist for a second to move it up away from the tray to prevent Daly from touching his tray. Daly alleges an injury but the medical record and Daly's behavior in the video footage show that any injury was mild. Daly did not react as if he was hurt or in pain. Later that day, Daly was playing basketball when medical staff came to examine his wrist.

Daly argues that Comrie created the security issue because guards are not allowed to eat in front of inmates. Doc. 25 at 6–7. Regardless, any security problem or concern is minimal. Reaching for food on the tray does not present a large threat, and at best presents rude or annoying behavior. However, like the regulation that officers are not to eat with inmates, there is also a rule that inmates are not allowed to touch other people's food tray for sanitation reasons. Doc. 21 at 6. Daly does not appear to actively resist but did initiate the contact, both in coming near Comrie to begin with and reaching for the tray. There is no evidence that the action of grasping Daly's hand as it reached for Comrie's biscuit was done with malicious intent or anything other than the intent to maintain or restore proper discipline. As such, there is no violation of Daly's constitutional rights. As there is no constitutional violation, Comrie is entitled to qualified immunity. Because

Comrie is entitled to qualified immunity, he is entitled to summary judgment on the individual capacity claim.

### B. Official Capacity Claim

When a suit is initiated against an individual government officer in their official capacity, the suit is effectively "against the governmental entity itself." White v. Jackson, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, the suit against Comrie in his official capacity is against Pennington County. Section 1983 provides a cause of action against any "person" who, acting "under color of" state law, deprives the plaintiff of "rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. Municipalities and their employees are suable "persons" under § 1983, and the employees can be sued in both their official and individual capacities. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978); Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999).

The Supreme Court in Monell v. Department of Social Services held that limits exist on suing municipalities under § 1983. 436 U.S. at 690–95. Most significantly, Monell held that a municipality is not liable under § 1983 simply because one of its employees violated the Constitution. Id. at 691. Rather, a plaintiff suing a municipality under § 1983 must show that the municipality's "policy" or "custom" caused the plaintiff's constitutional deprivation. Id. at 694. This rule "was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986).

"Policy" and "custom" mean different things under Monell. Corwin v. City of Independence, 829 F.3d 695, 699–700 (8th Cir. 2016). A municipality's official policy includes actions by its legislative body, Connick v. Thompson, 563 U.S. 51, 61 (2011), and decisions or

8

actions by a municipal employee who has "final policymaking authority" as to "the subject matter in question," Pembaur, 475 U.S. at 483 (plurality opinion). A municipality is not liable under § 1983 unless there is "a direct causal link between" the municipal policy or custom and the plaintiff's constitutional deprivation. City of Canton v. Harris, 489 U.S. 378, 385 (1989); see also Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997) (explaining that the plaintiff must show that the municipality, "through its *deliberate* conduct, . . . was the 'moving force' behind the injury alleged"). Moreover, "there must be an unconstitutional act by a municipal employee before a municipality can be held liable," although "there need not be a finding that a municipal employee is liable in his or her individual capacity." Webb v. City of Maplewood, 889 F.3d 483, 487 (8th Cir. 2018) (citation omitted).

First, and most importantly, Comrie did not violate any of Daly's constitutional rights. Thus, there is no basis for suit against Comrie in his individual or official capacities. For the sake of argument, however, this Court will continue with the analysis regarding Daly's policy argument. Specifically, Daly argues that South Dakota Codified Law § 22-18-2 creates a policy that would provide a direct causal link to unconstitutional conduct by government officers. However, that code section reads:

> To use or attempt to use or offer to use force or violence upon or toward the person of another is not unlawful if necessarily committed by a public officer in the performance of any legal duty or by any other person assisting the public officer or acting by the public officer's direction.

SDCL § 22-18-2. However, this is not a protection for officers that use excessive force. See Spenner v. City of Sioux Falls, 580 N.W.2d 606, 612 (S.D. 1998). Rather, this statute simply codifies the right to use force necessary to carry out their duties. Id. An officer who uses excessive force is not protected by this statute, as any use of excessive force is not necessary when performing a legal duty, as required by the statute. Id.; SDCL § 22-18-2. Thus, this is not a policy

9

establishing a direct causal link causing a constitutional violation. Because there was no unconstitutional act by Comrie and no policy that directly caused an unconstitutional act, there is no liability against Comrie in his official capacity. As such, Comrie is entitled to summary judgment on the official capacity claim.

IV. **Conclusion**

For the reasons discussed above it is hereby

ORDERED that Defendant's Motion to Dismiss converted to a Summary Judgment Motion to facilitate the consideration of video of the incident and the record of Daly's medical examination after the incident, Doc. 20, is granted.

DATED this 18th day of April, 2023.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE